Samuels, J.
This case presents, for the first time in this court, the question as to the true construction of sections 4 and 5, chapter 110, pages 474 and 475 of the Code of Virginia. This statute differs widely from that formerly in force, 1 Rev. Code of 1819, ch. 107, §11, 12, in regard to legal jointures; ánd it approaches very nearly to the law of equitable jointure, as heretofore administered by the courts of chancery.
Our case seems to turn upon the several questions:
1st. What estate may make a jointure?
2d. Has such estate been devised by Craig to his wife ?
3d. Was that estate intended to be a jointure?
4th. If so intended, has the wife made a valid election, accepting the jointure and relinquishing dower?
In regard to the first question: the statute is too plain to admit of doubt. Either real or personal estate of itself may make a jointure: it follows that both combined may have the like effect. The question was brought to the mind of the general assembly by the revisors, whether real estate only, or personal estate as well, should make a jointure. See Report of Revisors 565, ch. 110, § 4, and note. The general as *522 sembly enacted that real or personal estate might make a jointure. It is not required that the jointure should begin at any particular period, or be of any particular duration of time.
Upon the second of the questions above stated, it appears that testator’s whole personal estate was bequeathed to his wife in some form ; the slaves for life; his goods and chattels absolutely; for on the authority of Stinson's ex'or v. Day & wife, 1 Rob. R. 435, and Dold v. Wallace, 3 Leigh 258, it cannot be held that testator’s children had any interest in the goods and chattels. The interest on money due to testator was given to his wife, to be used by her for the benefit of his children. This provision far exceeded the wife’s distributive share in the personal estate, in case she had asserted her claim to such share within the time and in the mode prescribed by the statutes, Code, ch. 123, § 12, p. 524; Sess. Acts 1852, ch. 28, § 1, p. SO. The argument on behalf of the appellees was chiefly directed to the purpose of proving that no beneficial interest in land was conferred by Craig’s will on his widow; that her control over a portion of the real estate during her widowhood, was only as an agent or trustee for John Craig, the devisee in fee. If Erneline Craig the widow, and John Craig the son and devisee, had been strangers to the testators, I am inclined to think that the will would have conferred on her an estate during widowhood; that there is no appreciable difference between undefined control of real estate for a time, and a right to enjoy that estate for that time. However it would have been between mere strangers, yet the case affords other aids in the construction of this will: they are found in the relations of the parties, the condition of the estate, and of the beneficiaries under the will. Mrs. Craig, the widow, had a right of dower in her husband’s real estate, which he could not affect without her consent. *523 He might by law offer her a jointure of real or personal estate, or of both, in lieu of dower; and if she accepted the offer, her right of dower would be barred. The will should be construed in reference to the limits of the husband’s power over his estate, and should be held to be within those limits, unless he appears to have intended to disregard them. If no property be given by this will as a jointure, then the husband exceeded his power in making present devises of his whole real estate by specific metes and bounds. ' This disregard must be followed by a derangement of the whole scheme of his will; for the dower in the whole estate must be assigned without regard to the metes and bounds of the specific devises. Some of the devisees must give up the whole or a large portion of their land to be held as dower, and then look to the other devisees for contribution to alleviate the burden imposed by the dower estate.
It is not shown that there is any thing in the condition of John Craig the devisee, which should require Ms property to be put under the control of his mother for an indefinite time. He was thirteen years old at the time of his father’s death. If the devise had been intended for his sole benefit, it is impossible to see what interest of his would be promoted by withholding his property from him after arrival at full age; or by putting his property in the hands of another to be held for an uncertain time, without security to account for its profits. Other and younger devisees were left to the care of the law, to be exercised through guardians. It is apparent that the testator intended that his infant children should reside with their mother, the widow; thus it was necessary that she should have a dwelling-house; and it is shown by the record that the only dwelling-houses on the estate were on that part of the land put under her control during widowhood. The personal estate given to the wife, consists *524 chiefly of slaves, live stock and farming utensils. Some of these subjects could be “enjoyed” and “ used” only on a plantation. In my judgment it is clear that the widow was invested with a beneficial interest during widowhood in that part of the land put under her control.
Passing to the third question, it may be said that the second and third questions run into each other to some extent, so that a part of what has been said in regard to the second, applies to the third. The testator intended his will in all its parts to be effectual. If we suppose his intention to have been to create a jointure by means of the real and personal estate given to his wife, the will is consistent in all its parts. If, however, it be supposed that an estate in dower is yet to be carved out of the lands, then the devisees will, to some extent, be deprived of the lands devised to them respectively; and parts of the will are in conflict. If it shall be held that no jointure was intended, the widow on the death of her husband was entitled to dower, one-third part of the whole estate. Whether she would hold the land devised, and also her dower assigned out of the other land; or whether the land devised to her would be required to contribute to the estate in dower, it is not necessary to consider ; for in either event, the consequences would be so much, at variance with the whole scheme of the will, that I am constrained to believe that the provision made for the wife was intended to be in lieu of dower, and not in addition to it.
It only remains to consider the fourth question, whether the widow has made an election to accept the jointure in lieu of dower. On the general principles of law, a party cannot be inquired to make an election without such knowledge of the subjects submitted to his choice as will enable him to choose discreetly. On the same principles, a party cannot be *525 held to have made an election without such knowledge, unless it manifestly appears that he intended to waive the benefit of accurate information ; that he intended to incur the risk of making a bad choice. In our case, it is shown that the widow had full knowledge of the property given her by the will; she had it in her own possession ; she repeatedly and expressly declared that she accepted and held the property as a full satisfaction of her interests in her husband’s estate, and refused to take steps necessary to obtain any thing further from that estate. That an election may be made by acts in pais, seems to be well settled by the courts. 1 Lorn. Dig. p. 146 of new edition, 121 of old; 1 Bright on Husband and Wife 546.
It would be hard to conceive a case in which an election could be more distinctly made than was that in our case.
I am of opinion the decree should be reversed, and the bill dismissed; giving the appellants their costs expended in this court and in the Circuit court.
The other judges concurred in the opinion of Samuels, J.
Decree reversed, and bill dismissed.